UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                      :        Chapter 11

CONNIE A. JOHNSON                              :

        Debtor                               :        Bankruptcy No. 05-39238bf

...............................................

MEMORANDUM

...............................................

        Two contested matters are presently before me in this chapter 11 case. First, the United States trustee seeks conversion of this case to chapter 7 under 11 U.S.C. § 1112(b) or, alternatively, dismissal of this case. Second, the debtor, who had sought confirmation of her second amended plan of reorganization pursuant to 11 U.S.C. § 1129(b), now seeks additional time to propose and confirm a third amended plan of reorganization.

        The United States, acting through its agency the Internal Revenue Service (IRS), opposed confirmation of the debtor's second amended plan due to lack of feasibility, but is willing to afford the debtor one further opportunity at confirmation. The United States trustee, however, opposes the debtor's request to consider another chapter 11 plan arguing:

> The United States Trustee submits that the debtor is financially unable to offer any more money and she can not modify the rights of the creditors to accept any less, unless the creditors affirmatively agree. Given that scenario, the debtor is unable to amend a plan to comport with all the requirements of 11 U.S.C. § 1129, and specifically 11 U.S.C. § 1129(a)(11). The United States Trustee therefore submits that giving the debtor the opportunity to file a third plan is pointless absent the express consent of the creditors. The United States Trustee submits that conversion of this case is the appropriate remedy as the debtor may still obtain a

      discharge of her dischargeable debts.  The United States
      Trustee does not oppose dismissal of the case.

U.S. Trustee Post-Hearing Memorandum, at 5.

      As will be discussed, there is no dispute that the debtor's proposed second amended plan cannot be confirmed.  Thus, the actual issue before me is whether the debtor can reorganize under chapter 11 and, if so, whether it is an appropriate exercise of discretion to afford her an additional opportunity to do so under the circumstances of this case.

I.

      After an evidentiary hearing, and upon taking judicial notice of certain matters of record in this case, I make the following factual findings.

      The debtor, Ms. Connie Johnson, commenced this bankruptcy case by filing a petition under chapter 13 on November 1, 2005.  On that same date, the debtor filed a proposed chapter 13 plan proposing monthly payments of $210 for 54 months.  This plan provided for no priority claims (except for payments to debtor's bankruptcy counsel) and stated that secured claims held by Ocwen Loan Servicing and Southside Bank would be cured of their prepetition delinquencies by trustee payments aggregating $9,500.  Further, the debtor proposed to tender postpetition payments directly to creditor National City Bank.

      Also on November 1, 2005, the debtor filed bankruptcy schedules of her monthly income and expenses.  Schedule I, her disclosure of monthly income, reflects three such sources: employment at Forman Mills as a manager, earning net monthly

income of $1,007; employment at Liberty Resources, earning $1,215 monthly; and a monthly contribution from her non-dependent daughter of $600. Her monthly expenses, itemized on Schedule J, were disclosed at $2,612. Thus, the debtor represented that her monthly income exceeded her expenses by only $210. And the existence of net monthly income was due to a contribution from her daughter.

On January 30, 2006, the IRS objected to the debtor's proposed chapter 13 plan. Its objection alleged that the debtor had failed to file federal income tax returns for calendar years 2001 to 2004. Based upon the information the IRS then possessed, this creditor estimated the debtor's tax liability at more than $358,000, of which about $93,000 was categorized as a priority claim, and about $11,000 of the claim as secured. The debtor's proposed chapter 13 plan did not provide for payment of the IRS's claim.

The debtor responded by objecting to the IRS proof of claim. At a hearing on that objection, the IRS agreed to amend its claim. After some amendments, and the debtor's later challenge raising bifurcation under section 506 of the secured portion of the claim, the IRS's total claim was fixed at $201,574.93, of which $9,920 is secured and $10,301.27 is a priority claim. See IRS Amended Claim filed February 2, 2007; Order dated December 6, 2007.

Ocwen Loan Servicing also filed an objection to the debtor's proposed chapter 13 plan. It maintained that it was owed more than the $3,500 that the plan allocated to Ocwen on its secured claim.

On July 25, 2006 an order was entered denying confirmation of the debtor's chapter 13 plan. Just prior to this adjudication, on July 24, 2006, the debtor moved to convert her case to one under chapter 11, alleging (in effect) that her debts exceeded the

3

ceiling established for chapter 13 cases by section 109(e). This conversion request was granted as unopposed pursuant to 11 U.S.C. § 1307(d) on August 22, 2006. Thereafter, the debtor amended her schedule of unsecured creditors, listing a disputed total amount of $259,000.

The debtor's bankruptcy filing was motivated by her desire to avoid a foreclosure sale of real property located at 868 Simonson Road, Farnham, Richmond County, Virginia. Ex. D-1 (Schedule A). She owns this property in fee simple, and it is worth $112,000. See Order of December 6, 2007. There are two mortgage liens (or deeds of trust) on this real property, which liens have priority over the statutory lien held by the IRS. The second mortgage lien is held by Ocwen Loan Servicing, LLC, which filed a secured proof of claim in the amount of $71,800.48, docketed as claim #10. Ex. D-2. The first mortgage lien is held by Southside Bank, which filed a secured proof of claim docketed as claim #6, and which asserts that the debtor owes $32,821.42. Thus, the mortgage liens total $104,241.70. When the IRS secured claim of $9,920—which claim is secured by the debtor's real and personal property, the latter being valued at about $2,420, see December 6th order—is added to the mortgage liens, the debtor has little or no equity in her Virginia property.

On April 16, 2007, the debtor filed her first proposed chapter 11 plan. On April 24, 2007, Ocwen filed an objection thereto. This prompted the debtor to file her first amended chapter 11 plan on June 15, 2007. This was soon followed by a second amended plan on June 25, 2007. On July 6, 2007, the debtor was directed to amend her section 1125 disclosure statement, and the amended disclosure statement was approved on July 12, 2007. A confirmation hearing on this plan was originally scheduled for

August 27, 2007 but was postponed a number of times at the debtor's request for reasons including the adjudication of claims objections. (For example, on August 14, 2007, the debtor filed objections to various proofs of claims submitted by Arrow Financial.)

On August 23, 2007, the United States trustee filed the instant motion to convert or dismiss this case. The motion alleged three grounds for relief under section 1112:

> The Debtor has failed to submit all required monthly operating reports to the United States Trustee. The Debtor's failure to do so is cause for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(F).
>
> The Debtor has failed to submit quarterly fees payments to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), which fees are obligations of all debtors to the United States Trustee directly resulting from the administration of this case. The Debtor's failure to do so is cause for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(K).
>
> The Debtor's actions in this case have resulted in a substantial and continuing loss to or diminution of the estate and demonstrate the absence of a reasonable likelihood of rehabilitation. The Debtor's actions constitute cause for conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(A).

U.S. Trustee's Motion, ¶¶ 5-7.

Ms. Johnson, as a chapter 11 debtor in possession, began filing monthly operating reports (as required by Fed. R. Bankr. P. 2015(a) and the directives of the United States trustee) starting with September 2006. Some of the reports were not filed timely, thus serving as the first basis for the section 1112(b) motion.

The United States trustee has summarized these chapter 11 monthly reports. Ex. T-2. My own summary of the debtor's monthly operating reports, reflecting all income and expenses as revealed by the debtor, is as follows:

**Summary of Monthly Operating Reports**

|  | Sept-06 | Oct-06 | Nov-06 | Dec-06 | Jan-07 | Feb-07 | Mar-07 | Apr-07 |
|---|---|---|---|---|---|---|---|---|
| **Income** | $2,920 | $2,190 | $2,255 | $2,255 | $2,255 | $2,326 | $2,396 | $1,900 |
| **Expenses** | 2,833 | 2,106 | 595 | 595 | 595 | 595 | 8,445 | 1,864 |
| **Quarterly Fees** |  |  |  |  |  | 250 |  | 250 |
| **Net Income (Loss)** | 87 | 84 | 1,660 | 1,660 | 1,660 | 1,481 | -6,049 | -214 |
| **Cash on Hand** |  | 84 | 1,512 | 3,024 | 4,536 | 5,869 | 0 | 0 |

|  | May-07 | Jun-07 | Jul-07 | Aug-07 | Sept-07 | Oct-07 | Nov-07 | Dec-07 | Jan-08[1] |
|---|---|---|---|---|---|---|---|---|---|
| **Income** | $1,779 | $1,785 | $1,783 | $2,502 | $3,202 | $1,629 | $2,261 | $3,127 | $3,203 |
| **Expenses** | 2,339 | 1,547 | 1,739 | 1,162 | 2,367 | 2,265 | 1,566 | 2,244 | 3,293 |
| **Quarterly Fees** |  |  |  | 500 |  | 250 |  | 250 |  |
| **Net Income (Loss)** | -560 | 238 | 44 | 840 | 835 | -886 | 695 | 633 | -90 |
| **Cash on Hand** | 0 | 238 | 282 | 662 | 1,497 | 611 | 1,306 | 1,939 | 1,849 |

These reports disclose that the debtor has not been receiving any cash contributions from her daughter, but has been receiving a small pension. In addition, they reveal that after converting her case to chapter 11, the debtor began receiving rent of $500 monthly from the Virginia property. It is also apparent from these reports that in the 17 months covered by these reports, the debtor has been able to save less than $2,000.

---

[1]The January 2008 report was filed after the confirmation hearing was held.

During this period, she has not tendered any plan payments to creditors, except for certain regular postpetition payments.

Her proposed second amended chapter 11 plan contains 7 classes of claims: class 1 consists of priority claims; class 2 contains the secured claim of Southside Bank, the first mortgagee on the Farnham, Virginia property; class 3 holds the secured claim of Ocwen, the second mortgagee; class 4 consists of the secured claim of National City Bank held on a 1998 Nissan Sentry automobile; class 5 contains the secured claim of the IRS; class 6 holds the secured claim of Coggin Furniture; and class 7 consists of the class of general unsecured claims. Ex. D-1.

In sum, the debtor's proposed second amended chapter 11 plan provides that she would pay priority claims in full within 120 days after confirmation; make regular monthly mortgage payments to the two Virginia property mortgagees while curing the pre-bankruptcy mortgage arrears by paying them a combined $360 per month for 15 years; the outstanding car loan would also be repaid over 15 years at $45 per month; the priority tax claim of the IRS is not expressly dealt with; the IRS's secured claim would be paid over five years from the commencement of the case in November 2005 at the statutory interest rate, with payments beginning 30 days after confirmation; the secured claim of Coggin Furniture would be paid in full with a $100 payment 120 days after confirmation; and unsecured creditors would receive a 0.1% dividend, or $1 each, whichever is greater, 120 days after confirmation. The plan also provided for the debtor to receive a bankruptcy discharge upon confirmation. Ex. D-1, Article VI.

The debtor's report of plan voting, Ex. D-2, reveals that only one creditor voted in favor of her proposed plan: Southside Bank. This creditor, however, filed both a

7

secured claim and a small unsecured claim. The debtor had successfully objected to the claims of all other unsecured creditors that voted against the plan. Thus, classes 2 and 7 may have supported the plan, there being no other negative votes. Classes 3-6 did not vote, and therefore to the extent those classes are impaired, they have rejected the plan.

The debtor's testimony filled in some gaps in the documentary evidence but also revealed difficulties in confirmation of her proposed plan.

Presently, as was revealed in her income Schedule I, she works for Forman Mills and Liberty Resources. As for the latter, she is employed full-time at 40 hours per week, netting $630. For the former, she works 35 hrs per week at $10.35 per hour, netting $500 to $600. Thus, she testified that she works 75 hours per week at her two jobs. In addition, she receives a monthly pension of $138. She also rents her Virginia realty for $500 monthly.

The debtor lives with her adult daughter and pays the daughter no rent. She does pay certain utility expenses and food expenses. Plus, she has expenses associated with her car and health insurance, as well as the Virginia property. She anticipates having to pay about $2,957 per month in plan payments and normal living expenses (the latter being estimated by her at a very modest $500 per month), and projects her monthly employment income at $2,500, plus rent of $500 and pension payments of $138. Ex. D-5. She conceded at the hearing, however, that her projection of monthly plan payments are understated by at least $90 per month. Furthermore, her projected monthly income of $3,138 in Ex. D-5 is not consistent with her operating reports filed since September 2006.

II.

It is problematic whether a plan is feasible and is fair and equitable under section 1129(b) when the plan would last 15 years, repays a car loan involving a 1998 automobile over the life of the plan, and is based on the debtor receiving monthly income that has little historical support. That precise issue though need not be resolved, as the debtor concedes that drafting errors in her plan, her miscalculation of the amount needed to fund the plan, and the provisions of section 1141(d)(5) (providing that a discharge in an individual chapter 11 presumptively is entered only after completion of all plan payments, see generally In re Goldstar Emergency Medical Services, Inc., 2007 WL 208441, at *5 n.2 (Bankr. S.D. Tex. 2007)), preclude confirmation.

Nevertheless, a related issue remains in this case. The debtor's opposition to dismissal or conversion now is based primarily upon her request to be granted additional time to confirm another chapter 11 plan. In support thereof, the debtor has attached a copy of a third amended chapter 11 plan to her posthearing memorandum. This proposed third amended plan is similar to the second amended plan just described. Certain drafting errors have been eliminated, but much of the plan remains unchanged.

The classification of claims is the same, except the third amended plan provides that the priority tax claims of the IRS and the Pennsylvania Department of Revenue are now paid as if they were in class 5, along with the IRS's secured claim, at statutory interest and payments to conclude within five years of the commencement of the case. This third amended plan also calls for payments over ten years to classes 2 through

9

4.[2] Further, the proposed plan states that the debtor would receive her bankruptcy discharge only after completing her plan payments. The effective date of the plan would be 30 days after confirmation.

The debtor's third amended plan states that she would pay creditors in classes 2 through 5 a total of $1,254.50 each month, plus maintain regular monthly mortgage payments on the first and second mortgages on the Virginia property, equaling another $1,292. The debtor would also have to tender quarterly fees to the U.S. trustee under 28 U.S.C. § 1930(a)(6) in the now minimum amount of $325 (averaging $108.33 per month).[3] Thus, before paying any required priority counsel fees[4] or normal living expenses, the debtor desires to propose a ten year plan requiring, at least for its first few years, payments of $2,654.83. Even if her monthly expenses for food, transportation, utilities, insurance and the like could be limited to the debtor's estimated $500 over a period of years, which is very doubtful, Ms. Johnson would need to demonstrate a likelihood of monthly income of at least $3,154.83 to meet her burden of demonstrating plan feasibility under section 1129(a)(11). See generally, e.g., In re Danny Thomas

---

[2] Where National City Bank, the automobile lender, was to receive 180 monthly payments of $45 in the second amended plan, it would receive 120 monthly payments of $45 in the third amended plan.

[3] See http://www.paeb.uscourts.gov, posting a notice from the Office of the United States Trustee stating that, effective January 2008, minimum quarterly fees in chapter 11 cases would increase from $250 to $325.

[4] The third amended plan states that the debtor owes $644 to her former chapter 13 attorney and expects to owe $25,000 to her chapter 11 attorney. According to the third amended plan, the latter attorney would "defer or otherwise agree to collect [his fee] only if the Debtor has the means to make these payments." Priority claims, such as counsel fees awarded under section 330(a), must be paid in full on the effective date unless the claimant agrees otherwise. 11 U.S.C. § 1129(a)(9).

Properties II Ltd. Partnership, 241 F.3d 959, 963 (8th Cir. 2001) ("The debtors bear the burden of establishing the feasibility of their plans by a preponderance of the evidence.").

Although testifying that she works 75 hours per week in two jobs, as noted in the table above, the debtor has received income equal to or greater than $3,154.83 (inclusive of pension and rental income) in only two of the months (including the January 2008 report) since this chapter 11 case commenced in September 2006. See Ex. T-2. Moreover, in those two months, September 2007 and January 2008, the debtor's reported expenses, not including her monthly mortgage payments, were $703 and $1,609 respectively: greater than her $500 per month projection. Therefore, even in those two months, her net income would be insufficient to fund her desired third amended plan.

The U.S. trustee seeks to have this case converted to chapter 7, or dismissed, because the debtor—after spending more than 28 months in bankruptcy, including more than 18 months as a chapter 11 debtor in possession—has not been able to confirm a reorganization plan and has little likelihood of doing so in the near future (i.e, the third of the dismissal grounds alleged in her motion). Upon review of the evidence presented, I concur with the U.S. trustee's assessment.

The feasibility requirement of section 1129(a)(11) requires a greater showing of plan viability than the debtor is likely to demonstrate in the near future. See In re Danny Thomas Properties II Ltd. Partnership, 241 F.3d at 964. In addition, the fairness of a ten year plan proposed in 2008 to a creditor holding a secured claim on a 1998 automobile (that is unlikely to remain operable and in the debtor's possession over the length of the plan) is dubious. See generally In re D & F Construction, Inc., 865 F.2d 673, 676 (5th Cir. 1989); In re Adelphia Business Solutions, Inc., 341 B.R. 415, 421

(Bankr. S.D.N.Y. 2003) ("[The] purpose [of the feasibility requirement] is to protect creditors against unrealistic plans that have little or no chance of success."); In re 222 Liberty Associates, 108 B.R. 971, 995 (Bankr. E.D. Pa. 1990); see also In re Frascella Enterprises, Inc., 360 B.R. 435, 446 (Bankr. E.D. Pa. 2007) (plan proposed in good faith where "there was fundamental fairness in dealing with the creditors"). Thus, near future confirmation of a third amended plan, based upon the current evidentiary record, is extremely doubtful.[5]

In addition, this entire reorganization case has been pending more than two years and has seen very little creditor support. Its sole purpose appears to be the protection of real property in which the debtor does not reside, and in which she has little or no equity. Furthermore, the debtor's ability to work two full-time jobs with 75 hour work weeks for years, so as to maximize her income, is problematic.

---

[5]The debtor appears to minimize the importance of the feasibility requirement for chapter 11 plans. See Debtor's Memorandum, at 2-3. I disagree, as important creditor interests are involved. As observed by one commentator, it is the burden of the plan proponent at a confirmation hearing to provide sufficient evidence of her ability to fund a proposed plan:

> Particularly important in this regard is that the plan proponent demonstrate that any necessary financing has been obtained, or is likely to be obtained. With or without such financing, "section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." Feasibility obviously becomes more difficult to establish if the plan provides for long-term payments to creditors. "In general, proof of feasibility is an easier task when payouts are done over shorter periods of time. The longer the debtor proposes a payout, the more difficult it may become to prove distant future ability to service debts."

7 Collier on Bankruptcy, ¶ 1129.03[11], at 1129-74.2 to 74.3 (15th ed. rev. 2007) (footnotes omitted) (quoting In re SM 104 Ltd., 160 B.R. 202 (Bankr. S.D. Fla. 1993) and In re White, 36 B.R. 199 (Bankr. D. Kan. 1983) respectively).

Section 1112(b) of the Bankruptcy Code grants the authority to dismiss or convert a chapter 11 case to one under chapter 7, "whichever is in the best interest of creditors and the estate, for cause . . . ." The term "cause" is not defined by the statute; the examples provided by subsection 1112(b) are meant to be nonexclusive. See, e.g., In re Brown, 951 F.2d 564, 572 (3d Cir. 1991); Hall v. Vance, 887 F.2d 1041 (10th Cir. 1989); In re Smith, 77 B.R. 496 (Bankr. E.D. Pa. 1987). Factors other than those expressly enumerated in the statute may be considered, and the bankruptcy court has the discretion to reach the appropriate result in a particular case. Generally, a court should consider the "totality of the circumstances." See, e.g., In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004), cert. denied, 545 U.S. 1110 (2005); In re Trident Associates Ltd. Partnership, 52 F.3d 127, 131 (6th Cir. 1995); In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2d Cir. 1991); In re Ravick Corp., 106 B.R. 834, 843 (Bankr. D.N.J. 1989).

Whether cause exists under section 1112(b) in a particular instance and, if so, whether conversion or dismissal is more appropriate are questions naturally left to the sound discretion of the bankruptcy court. See, e.g., Matter of Sullivan Cent. Plaza I, Ltd., 935 F.2d 723, 728 (5th Cir. 1991); Hall v. Vance; Matter of Koerner, 800 F.2d 1358, 1367 (5th Cir. 1986). In so concluding, a court need not provide an exhaustive elaboration of its reasoning. See Matter of Koerner, 800 F.2d at 1368; In re Nardi, 1991 WL 255681, at *2 (E.D. Pa. 1991). Section 1112(b) effectively enables the bankruptcy court to administer promptly chapter 11 cases upon its docket. See generally In re Timbers of Inwood Forest, Ltd., 808 F.2d 363 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988). When it becomes apparent that a chapter 11 reorganization is highly unlikely, that case

13

should either be dismissed or converted.  See In re Brown, 951 F.2d at 572; In re Edwards, 1996 WL 407253, at *3 (Bankr. E.D. Pa. 1996); In re HBA East, Inc., 87 B.R. 248, 261 (Bankr. E.D.N.Y. 1988).

Although the debtor appears to have cured two of the defects raised by the United States trustee in its motion to dismiss—delinquent operating reports and quarterly fees—the United States trustee still maintains that there is no reasonable likelihood that Ms. Johnson can reorganize under chapter 11.  The evidence presented supports this position.  The debtor has had ample opportunity to reorganize in bankruptcy, has been unable to do so, and has little likelihood of doing so in the near future with her proffered third amended plan.  Therefore, the better exercise of discretion is to decline the debtor's request for an additional period of time to propose a chapter 11 reorganization plan.  As sought by the United States trustee, relief under section 1112(b) for cause, is warranted.  See, e.g., In re Cothran, 45 B.R. 836, 838-39 (S.D. Ga. 1984).  And as a chapter 7 trustee would have little or no assets to administer for creditors, dismissal is more appropriate than conversion to chapter 7.  See, e.g., In re Tornheim, 181 B.R. 161, 168 (Bankr. S.D.N.Y. 1995) ("The debtors do not have any property that a chapter 7 trustee could administer for the benefit of creditors.  Conversion, therefore, does not serve the interest of the creditors and the estate.").

Finally, in order to prevent any misuse of the banrkruptcy process, the debtor shall need to obtain court approval prior to filing any future bankruptcy cases for the next six months.  See generally In re Casse, 198 F.3d 327 (2d Cir. 1999).

An appropriate order shall be entered.

14

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 11

CONNIE A. JOHNSON                              :

      Debtor                            :        Bankruptcy No. 05-39238bf

................................................

ORDER

................................................

AND NOW, this 11th day of March 2008, for the reasons stated in the accompanying memorandum, it is hereby ordered that confirmation of the debtor's second amended chapter 11 plan is denied.

It is further ordered that the motion of the United States trustee for relief under 11 U.S.C. § 1112(b) is granted and this case is dismissed.

It is also ordered that the debtor is barred from filing future bankruptcy cases for 180 days from the date of this order without obtaining prior court approval.

The clerk of court shall serve a copy of this order upon all creditors.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Ms. Connie A. Johnson
2003 W. Hunting Park Avenue
Philadelphia, PA 19140

Ms. Connie A. Johnson
2007 W. Hunting Park Avenue
Philadelphia, PA 19140

Jason M. Kuratnick, Esquire
Special Assistant United States Attorney
IRS No. 23-08679
701 Market Street, Suite 2200
Philadelphia, PA 19106

Carrie L. Kleinjan, Esquire
IRS Office of Chief Counsel
701 Market Street, Suite 2200
Philadelphia, PA 19106

Kevin P. Callahan, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

Timothy McGrath, Esquire, Clerk of Court